31

UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION



MAR 0 2 2005

**CLERK'S OFFICE
DETROIT**

GORDON DITTMER,

       Plaintiff,

  v.

       CASE NO. 03-CV-74700-DT
       JUDGE ARTHUR J. TARNOW
       MAGISTRATE JUDGE PAUL KOMIVES

R. CORNEJO, LEE, JOHN DOE,
R. KELLOGG, WAZNY, GONZALES,
DANIEL ABRAMS, I. SCOTT, R. CARL,
K. SIGAFOOSE, PAUL H. RENICO,
MICHAEL POWELL, and BILL
MARTIN,

       Defendants.

_____/

## REPORT AND RECOMMENDATION

| | | | |
|---|---|---|---|
| I. | | RECOMMENDATION | 2 |
| II. | | REPORT | 2 |
| | A. | *Background* | 2 |
| | B. | *Legal Standard* | 8 |
| | C. | *Analysis* | 9 |
| | | 1.   *Exhaustion* | 9 |
| | |     a. Total Exhaustion | 10 |
| | |     b. Claims Against Defendant Wazny | 13 |
| | | 2.   *Deprivation of Property/Due Process* | 13 |
| | | 3.   *Access to Courts* | 15 |
| | |     a. Access to Courts Generally | 15 |
| | |     b. Analysis | 16 |
| | | 4.   *Other Constitutional Claims* | 18 |
| | |     a. Cruel and Unusual Punishment | 19 |
| | |     b. Equal Protection | 19 |
| | |     c. Privileges and Immunities | 20 |
| | | 4.   *Malicious Destruction of Property* | 21 |
| | D. | *Plaintiff's Motion to Amend* | 23 |
| | | 1.   *Legal Standard* | 23 |
| | | 2.   *Analysis* | 25 |
| | |     a. Defendants Scott, Carl, Abrams, Sigafoose, Renico, Powell, | |
| | |        Overton, Marschke, and Armstrong | 25 |
| | |     b. Defendants Cornejo and Doe | 28 |
| | E. | *Conclusion* | 30 |
| III. | | NOTICE TO PARTIES REGARDING OBJECTIONS | 30 |

I.      RECOMMENDATION: The Court should grant defendants' motion for summary judgment with respect to plaintiff's federal civil rights claims under 42 U.S.C. § 1983, and should decline to exercise supplemental jurisdiction over plaintiff's state law claims. The Court should also deny plaintiff's motion for leave to amend the complaint.

II.     REPORT:

A.      *Background*

Plaintiff Gordon Dittmer is a state prisoner under the custody of the Michigan Department of Corrections (MDOC). Plaintiff is, and was at all times relevant to this action, incarcerated at the St. Louis Correctional Facility (SLF) in St. Louis, Michigan. On December 24, 2003, plaintiff commenced this action by filing a *pro se* civil rights complaint pursuant to 42 U.S.C. § 1983. Defendants are various MDOC employees, specifically: Ricardo Cornejo, Richard Lee, Richard Kellogg, and Pete Wazny, correctional officers at SLF; Sergeant Nemus Gonzales, First Shift Command in Unit 2 at SLF; Daniel Abrams, Grievance Coordinator at SLF; Ivan Scott, Resident Unit Manager at SLF; Randy Carl, Assistant Deputy Warden at SLF; Kristen Sigafoose, Litigation Coordinator at SLF; Paul Renico, Warden at SLF; Michael Powell, Administrator of Prisoner Affairs for MDOC; and Bill Martin, Director of MDOC. Plaintiff also names as a defendant a John Doe sergeant at SLF.

Plaintiff alleges that on November 29, 2001, defendant Cornejo searched his cell and discovered an alleged "tattooing device" in the area of the cell controlled by the prisoner assigned to the lower bunk. This device was found in Cell 235. Cornejo identified plaintiff as being the prisoner assigned to the lower bunk, and issued a major misconduct report against plaintiff for possession of dangerous contraband. On the same day, defendant Lee gave the misconduct the status

2

of "non-bondable," and defendant Doe ordered that plaintiff be placed in administrative segregation. *See* Compl., ¶¶ 22-24. Plaintiff contends that defendants Cornejo, Lee, and Doe knew or should have known that the lower bunk of Cell 235 was not in his area of control because he was assigned to Cell 206; that the alleged tattooing device was not contraband; and that he was being placed in administrative segregation for an infraction he did not commit. *See id.* at ¶ 30.

Following defendant Doe's order, several correctional officers came to plaintiff's cell, Cell 206, to escort him to administrative segregation. According to plaintiff, all of his personal and legal property was properly stored in the cell. The correctional officers left his cellmate in the cell, but did not attempt to secure plaintiff's property. *See id.* at ¶¶ 25-27. On November 30, 2001, plaintiff was released from administrative segregation. Plaintiff reported to the property room as instructed, where he received only one duffel bag of property which had been packed from his cell by defendant Kellogg. *See id.* at ¶¶ 31-34. When he returned to his cell, plaintiff noticed that several volumes of his legal material were laying on the floor of the cell, and that they were wet and stained with coffee. *See id.* at ¶ 35. Plaintiff's cellmate, Calvin Cameron, told plaintiff that, shortly after plaintiff was removed from his cell, defendant Kellogg came into the cell and told Cameron to go wait in the day room. Cameron was instructed to return about 20 minutes later. When he returned to the cell, Cameron saw that much of plaintiff's property had not been packed, but was scattered over the floor and in trash receptacles and covered with coffee. Cameron placed plaintiff's personal and legal property which was not saturated in his own laundry bag, and gave that laundry bag to prisoner Ron Tomac, the Housing Unit Prisoner Representative, who in turn gave the bag to defendant Wazny. The remainder of the property Cameron placed on the floor and attempted to dry out with fans. *See id.* at ¶ 36. Tomac confirmed to plaintiff that Cameron had given him the bag; that he noticed the

3

bag contained plaintiff's gym shoes and other personal items; and that he gave the bag to defendant Wazny to be placed with plaintiff's personal property which had been packed by defendant Kellogg. *See id.* at ¶ 37. Plaintiff alleges that numerous items of property were not returned to him, including his gym shoes, stamps, personal letters, religious materials, pens and pencils, magazines, police reports from his criminal trial, mail from his appellate attorney, typed and handwritten drafts of *pro se* appellate briefs, and handwritten notes and legal research concerning his criminal appeal. *See id.* at ¶ 38.

Because defendant Wazny was not working at the time, plaintiff spoke with Correctional Officer Harmon regarding the missing laundry bag with his property. On December 2, 2001, defendant Wazny returned to the housing unit, and plaintiff and Tomac spoke with him concerning the missing bag. Wazny admitted that Tomac had given him the bag, and stated that he placed the bag in the Housing Unit-2 Bubble area, but did not know what happened to the bag after that. Over the next several days plaintiff, with the assistance of Harmon, Wazny, Correctional Officer Nash, and Tomac attempted to locate the bag, but was unable to do so. *See id.* at ¶¶ 40-42. Unable to locate the bag, plaintiff sent an intramural correspondence ("kite") to Nash in the Segregation Unit's property room requesting that he locate the bag. Plaintiff also sent a kite to the Inspector at SLF. The following day, Nash came to plaintiff's cell and gave him a copy of the property receipt that had been used by Kellogg, as well as an envelope from the State Appellate Defender's Office containing plaintiff's legal material. *See id.* at ¶¶ 43-45. Plaintiff alleges that the property receipt prepared by defendant Kellogg was not properly itemized and was not signed and dated; that he did not have the opportunity to sign or refuse to sign the receipt prior to receiving his property from Nash; and that he did not receive a copy of the receipt within 24 hours as required by MDOC policy. *See id.* at ¶¶

4

48-49.

On December 3, 2001, plaintiff received a response to his kite from the Inspector, informing him that the matter should be addressed to the shift commander. On December 5, 2001, plaintiff confronted Kellogg about the matter. At that time, defendant Gonzales approached plaintiff and Kellogg. When Gonzales indicated that he was the shift commander, plaintiff informed him of the Inspector's response and told Gonzales that Kellogg had destroyed his property and of the related efforts to locate the missing property. Plaintiff asked Gonzales to look in his cell at the damage Kellogg had caused, but Gonzales refused. Rather, Gonzales requested that plaintiff give him the copy of the property receipt. Plaintiff eventually did so, and Gonzales lost or destroyed it. *See id.* at ¶¶ 50-58. On December 11, 2001, a correctional officer located the missing laundry bag which had been given to Wazny by Tomac. However, the bag was empty. *See id.* at ¶¶ 61-62. On December 17, 2001, a hearing was held on the major misconduct ticket issued to plaintiff. The hearing officer found plaintiff not guilty, concluding that the photograph did not exhibit an illegal tattooing device. *See id.* at ¶ 63.

On December 7, 2001, plaintiff filed a Step 1 prisoner grievance with defendant Abrams, alleging that Kellogg had destroyed his personal and legal property, failed to properly secure and itemize his property, and failed to provide a property receipt within 24 hours; that Gonzales had taken and failed to return his property receipt; that he had been improperly placed in administrative segregation; and that as a result of his placement in administrative segregation his personal property was lost or destroyed. *See id.* at ¶¶ 59-60. On December 19, 2001, defendant Scott interviewed plaintiff in connection with his Step 1 grievance. Scott responded to the grievance by noting that plaintiff had not requested any relief. Plaintiff alleges that Scott did not investigate the matter being

5

grieved and did not interview any of the staff or prisoners involved. On the same day, defendant Carl signed the Step I response. Plaintiff alleges that Carl, like Scott, failed to investigate the matter. *See id.* at ¶¶ 66-70. On December 31, 2001, plaintiff sent a Step II grievance to defendant Renico, alleging that Scott did not properly investigate and respond to the Step I grievance. On January 8, 2002, defendant Sigafoose interviewed plaintiff in connection with the Step II grievance, at which time he explained all that had transpired in connection with his missing property. On January 9, Renico issued a response rejecting the Step II grievance. Specifically, Renico accepted Kellogg's version of events over plaintiff's, and also concluded that, under MDOC policies, reimbursement was not available for most of the property allegedly destroyed. *See id.* at ¶¶ 82-86. Again, plaintiff alleges that Renico and Sigafoose failed to interview any witnesses other than Kellogg and himself. *See id.* at ¶¶ 88-90.

Meanwhile, on January 7, 2002, plaintiff spoke with Deputy Warden Blaine Lafler in the Food Service Building about the matter. Lafler said that he would get someone to take a look at plaintiff's legal materials. Later that day, Inspector Patrick came to plaintiff's cell, where plaintiff showed Patrick the coffee-stained documents and related Cameron's description of finding the documents. Patrick told plaintiff to prepare for Patrick a list of the police reports and court transcripts that had been destroyed. *See id.* at ¶¶ 72-81.

Plaintiff alleges that on January 14, 2002, he sent a Step III grievance to the Director's Office. He has received no response to this grievance. On December 29, 2002, plaintiff mailed to Deputy Warden Connerly a letter and fifteen affidavits in support of his Step III grievance. On April 1, 2003, plaintiff sent a letter to the legislative ombudsman seeking a resolution of the grievance. On August 11, 2003, the ombudsman's office responded that no Step III grievance had been received

6

by the Director's office. *See id.* at ¶¶ 91-98.

Plaintiff alleges that defendants' actions constitute a denial of property without due process in violation of the Fourteenth Amendment, a denial of his First and Fourteenth Amendment right of access to the courts, and cruel and unusual punishment under the Eighth Amendment. Plaintiff also claims that defendants' actions amount to malicious destruction of property under state law.

On February 26, 2004, defendants filed a motion to dismiss pursuant to FED. R. CIV. P. 12(b)(6) or, in the alternative, for summary judgment pursuant to FED. R. CIV. P. 56(b).[1] Defendants contend that plaintiff has failed to exhaust his administrative remedies with respect to each claim and each defendant, and that the complaint should be dismissed under the "total exhaustion" rule. To the extent that the Court declines to adopt the total exhaustion rule, defendants contend that only plaintiff's claims against defendants Kellogg and Gonzales are exhausted, and that these claims fail as a matter of law. On March 26, 2004, plaintiff filed a motion for voluntary dismissal pursuant to FED. R. CIV. P. 41(a)(1)(ii) with respect to defendants Cornejo, Lee, Doe, Scott, Abrams, Sigafoose, Renico, and Carl. The Court granted this motion on June 17, 2004. Thus, the only remaining defendants are Kellogg, Wazny and Gonzales, as well as the as yet un-served Martin and Powell.

On July 21, 2004, plaintiff filed a declaration in opposition to defendants' motion, a brief in support of his response, and a statement of disputed issues of material fact. Plaintiff contends that he has exhausted his administrative remedies with respect to defendants Kellogg, Wazny, and Gonzales, and that genuine issues of material fact remain with respect to his claims against these defendants.

---

[1]Defendants Powell and Martin did not join in defendants' motion, as they have not yet been served with the summons and complaint. Likewise, defendant Doe, who has not been identified, has not joined in the motion.

7

B.    *Legal Standard*

A court can only decide a Rule 12(b)(6) motion on the basis of the pleadings. *See Song v. City of Elyria, Ohio*, 985 F.2d 840, 842 (6th Cir. 1993). The Court must treat the motion as one for summary judgment if "matters outside the pleading are presented to and not excluded by the court." FED. R. CIV. P. 12(b); *see Kostrzewa v. City of Troy*, 247 F.3d 633, 643-44 (6th Cir. 2001); *Burke v. Johnson*, 167 F.3d 276, 280 (6th Cir. 1999); *Performance Contracting, Inc. v. Seaboard Surety Co.*, 163 F.3d 366, 369 n.2 (6th Cir. 1998).

Under Rule 56, summary judgment should be granted "if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue of material fact and that the moving party is entitled to judgment as a matter of law." FED. R. CIV. P. 56(c). "An issue of fact is 'genuine' if the evidence is such that a reasonable jury could return a verdict for the non-moving party." *Hedrick v. Western Reserve Care Sys.*, 355 F.3d 444, 451 (6th Cir. 2004) (citing *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986)). "A fact is material only if its resolution will affect the outcome of the lawsuit." *Hedrick*, 355 F.3d at 451-52 (citing *Anderson*, 477 U.S. at 248). In deciding a motion for summary judgment, the Court must view the evidence in a light most favorable to the non-movant as well as draw all reasonable inferences in the non-movant's favor. *See Sutherland v. Michigan Dep't of Treasury*, 344 F.3d 603, 613 (6th Cir. 2003); *Rodgers v. Banks*, 344 F.3d 587, 595 (6th Cir. 2003).

"The moving party has the initial burden of showing the absence of a genuine issue of material fact as to an essential element of the non-moving party's case." *Hedrick*, 355 F.3d at 451 (citing *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986)). To meet this burden, the moving party need not produce evidence showing the absence of a genuine issue of material fact. Rather, "the

8

burden on the moving party may be discharged by 'showing' -- that is, pointing out to the district court -- that there is an absence of evidence to support the non-moving party's case." *Celotex Corp.*, 477 U.S. at 325. "Once the moving party satisfies its burden, 'the burden shifts to the nonmoving party to set forth specific facts showing a triable issue.'" *Wrench LLC v. Taco Bell Corp.*, 256 F.3d 446, 453 (6th Cir. 2001) (quoting *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986)); *see also*, FED. R. CIV. P. 56(e).

To create a genuine issue of material fact, however, the non-movant must do more than present some evidence on a disputed issue. As the Supreme Court has explained:

> There is no issue for trial unless there is sufficient evidence favoring the nonmoving party for a jury to return a verdict for that party. If the [non-movant's] evidence is merely colorable, or is not significantly probative, summary judgment may be granted.

*Anderson*, 477 U.S. at 249-50. (citations omitted); *see Celotex Corp.*, 477 U.S. at 322-23; *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 586-87 (1986). Thus, "[t]he existence of a mere scintilla of evidence in support of the non-moving party's position will not be sufficient; there must be evidence on which the jury could reasonably find for the non-moving party." *Sutherland*, 344 F.3d at 613.

C.    *Analysis*

1.    *Exhaustion*

Defendants contend that plaintiff has failed to exhaust his administrative remedies with respect to his claims against defendant Wazny. Defendants concede that plaintiff has exhausted with respect to defendants Kellogg and Gonzales, but nevertheless contend that the claims against these defendants should also be dismissed under the total exhaustion rule. The Court should conclude that plaintiff has exhausted his claims with respect to the remaining defendants in this case.

9

Exhaustion of administrative remedies is required by the Prison Litigation Reform Act of 1995 (PLRA), Pub. L. No. 104-134, 110 Stat. 1321 (Apr. 26, 1996). Section 803 of the PLRA, in relevant part, amended 42 U.S.C. § 1997e to provide: "No action shall be brought with respect to prison conditions under section 1983 of this title, or any other Federal law, by a prisoner confined in any jail, prison, or other correctional facility until such administrative remedies as are available are exhausted." 42 U.S.C. § 1997e(a). In *Brown v. Toombs*, 139 F.3d 1102 (6th Cir. 1998) (per curiam), the Sixth Circuit held that under this provision "prisoners filing § 1983 cases involving prison conditions must allege and show that they have exhausted all available state administrative remedies. A prisoner should attach to his § 1983 complaint the administrative decision, if available, showing the administrative disposition of his complaint." *Brown*, 139 F.3d at 1103.[2]

### a. Total Exhaustion

Defendants' total exhaustion argument derives from habeas corpus law, under which a habeas petition containing both exhausted and unexhausted claims a so-called "mixed petition"–must be dismissed in its entirety. *See Rose v. Lundy*, 455 U.S. 509, 522 (1982); *Rockwell v. Yukins*, 217 F.3d 421, 424 (6th Cir. 2000) (court cannot grant habeas relief even on claim which was exhausted where petition also contains unexhausted claims). The circuit courts that have considered the question are

_____

[2]The Sixth Circuit appears to be alone in placing the burden on petitioner to show exhaustion. The other circuit courts that have considered the question characterize lack of exhaustion as an affirmative defense. *See Massey v. Delman*, 196 F.3d 727, 735 (7th Cir. 1999); *Jenkins v. Haubert*, 179 F.3d 19, 29 (2d Cir. 1999); *Wendell v. Ashar*, 162 F.3d 887, 890 (5th Cir. 1998). Thus, in those circuits the defendant bears the burden of establishing that the claims are not exhausted, *see Massey*, 196 F.3d at 735, and the defense is subject to waiver and forfeiture, *see Perez v. Wisconsin Dep't of Corrections*, 182 F.3d 532, 536 (7th Cir. 1999); *Wendell*, 162 F.3d at 890.

divided on whether § 1997e(a) incorporates a total exhaustion rule. *Compare Ortiz v. McBride*, 380 F.3d 649, 656 (2d Cir. 2004), *cert. filed*, 76 U.S.L.W. 3324 (Feb. 28, 2005), *with Ross v. County of Bernalillo*, 365 F.3d 1181, 1190 (10th Cir. 2004). The Sixth Circuit has explicitly "reserve[d] to another day the question whether 'exhausted claims' in a 'mixed complaint' should be addressed when such claims would otherwise meet the pleading requirements or whether such claims should be dismissed in their entirety," *Knuckles-El v. Toombs*, 215 F.3d 640, 642 (6th Cir. 2000), although unpublished opinions from the Sixth Circuit implicitly support both positions. *See Hubbard v. Thakur*, 344 F. Supp. 2d 549, 554-55 (E.D. Mich. 2004) (Lawson, J.). A number of district courts have addressed this issue and concluded that total exhaustion is not required, and a court may dismiss unexhausted claims and proceed to address the merits of exhausted claims under § 1997e(a). *See Johnson v. True*, 125 F. Supp. 2d 186, 188-89 (W.D. Va. 2000); *Cooper v. Garcia*, 55 F. Supp. 2d 1090, 1094-95 (S.D. Cal. 1999); *Jenkins v. Toombs*, 32 F. Supp. 2d 955, 959 (W.D. Mich. 1999). The Court should agree with the reasoning of these courts and the Second Circuit in *Ortiz*.

Defendants argue that a total exhaustion rule is mandated by the plain language of § 1997e(a), which provides that "[n]o *action* shall be brought . . . until such administrative remedies as are available are exhausted." 42 U.S.C. § 1997e(a) (emphasis added). Defendants argue that the plain meaning of the word "action" encompasses an entire suit, not simply each claim within the lawsuit. The Supreme Court's decision in *Rose v. Lundy*, *supra*, however, dictates otherwise. Although the Court in *Rose* adopted a total exhaustion rule, this rule was based on the policy underlying the habeas statute, rather than on the language of the statute itself. The Court found the language of the statute ambiguous. That language provided that "'an *application* for a writ of habeas corpus . . . shall not be granted unless it appears that the applicant has exhausted the remedies

11

available in the courts of the State[.]'" *Rose*, 455 U.S. at 516 n.9 (quoting 28 U.S.C. § 2254(b)).

Thus, similar to the language of § 1997c(a), the language of the habeas statute appeared to apply to

the entire petition, rather than the individual claims. Nevertheless, the Supreme Court held that the

statute was "too ambiguous to sustain the conclusion that Congress intended to either permit or

prohibit review of mixed petitions." *Id.* at 516; *see Hubbard*, 344 F. Supp. 2d at 555; *Jenkins*, 32

F. Supp. 2d at 958.

After analyzing "the policies underlying the statutory provision to determine its proper

scope," *Rose*, 455 U.S. at 517, the Court did hold that those policies mandated a total exhaustion rule

in the habeas context. *See id.* at 518-22. As the courts that have considered the issue under §

1997e(a) have explained, however, the policies underlying the PLRA compel the opposite conclusion

in this case. As the *Cooper* court explained:

> "Mixed" habeas petitions, *i.e.*, those including both exhausted and unexhausted
> claims, must be dismissed in their entirety. *See Rose v. Lundy*, 455 U.S. 509, 510,
> 102 S.Ct. 1198, 71 L.Ed.2d 379 (1982). Nothing in the language or legislative history
> of the PLRA's amendments to section 1997e(a) supports a "total" exhaustion
> requirement, and defendants have failed to explain how or why habeas law is or
> should be applicable in section 1983 litigation. "Post conviction relief [under 28
> U.S.C. § 2254] and prisoner civil rights relief [under 42 U.S.C. § 1983] are
> analytically very different." *Martin v. United States*, 96 F.3d 853, 855 (7th
> Cir.1996); *see also Naddi v. Hill*, 106 F.3d 275, 277 (9th Cir.1997) (finding that the
> PLRA's filing fee provisions are inapplicable to section 2254 or 2255 proceedings).
> In addition, imposing a total exhaustion requirement would appear to
> contradict Congress' intent in enacting the PLRA. The clear import of the Prison
> Litigation Reform Act, Pub.L. No. 104-134, Title VIII, §§ 801-10, 110 Stat. 1321-66
> to 1321-77 (1996), as reflected in its title, is to curtail meritless prisoner litigation.
> Congress intended to discourage "frivolous and abusive prison lawsuits," *see*
> H.R.Rep. No. 104-378, 104th Cong., 1st Sess. 166 (1995) (the prison litigation
> reforms are intended to "discourage frivolous and abusive prison lawsuits"); and to
> prevent convicted criminals from receiving "preferential treatment" to that of
> "average law-abiding citizens." 144 Cong.Rec. 575251 daily ed. May 25, 1995
> (statement of Sen. Dole); *Green v. Nottingham*, 90 F.3d 415, 417 (10th Cir.1996);
> *Schagene v. United States*, 37 Fed.Cl. 661, 661 (Fed.Cl.1997). However, as a purely
> practical matter, if the Court were to construe section 1997e(a) as imposing a total

12

exhaustion requirement and dismiss the entire action, the prisoner would merely need to file a new suit alleging only his exhausted claims. Thus, because total exhaustion "delays the resolution of claims that are not frivolous ... and [ ] tends to increase, rather than alleviate, the caseload burden on ... [the] federal court[ ]," *Rose*, 455 U.S. at 522-23, 102 S.Ct. 1198 (Blackmun, J., concurring), and the plain language of section 1997e(a) does not explicitly require it, this Court has found it in the interests of judicial economy to reach the merits of those section 1983 claims that have been exhausted and dismiss only those that are not.

*Cooper*, 55 F. Supp. 2d at 1094-95 (alterations in original); *see also, Hubbard*, 344 F. Supp. 2d at 556-57; *Jenkins*, 32 F. Supp. 2d at 958-59. Accordingly, the Court should conclude that § 1997e(a) does not incorporate a "total exhaustion" rule.

### b.  *Claims Against Defendant Wazny*

The Court should also conclude that plaintiff has exhausted his claims against defendant Wazny. In his Step I grievance, plaintiff alleges that his property was placed in a duffel bag by Cameron and given to defendant Wazny. He further alleged that the correctional officers named in the grievance had deprived him of property and denied him access to courts. *See* Pl.'s Br. in Opp'n, Appx. A, Ex. 1 (Grievance SLF-0112-3618-19Z). In his Step II appeal, plaintiff explicitly complained that "[t]he actions of Officer Wazny in having failed to secure those personal and legal properties belonging to the grievant . . . were done maliciously and sadistically and contributed to and proximately cause the above described violations" of his rights. *Id.*, Ex. 3, at 3. Plaintiff filed an appeal to Step III, and although it appears that there is some question as to whether prison officials received such an appeal immediately following the Step II response, the Director's office did eventually respond to the Step III appeal on the merits. *See id.*, Ex. 7. Accordingly, the Court should conclude that plaintiff has exhausted his administrative remedies with respect to his claims against defendant Wazny.

### 2.  *Deprivation of Property/Due Process*

13

Plaintiff contends that defendants' actions deprived him of property without due process of law in violation of the Fourteenth Amendment. The Court should conclude that defendants are entitled to summary judgment on this claim.

In *Parratt v. Taylor*, 451 U.S. 527 (1981), *overruled in part on other grounds by Daniels v. Williams*, 474 U.S. 327, 328 (1986), the Supreme Court held that the negligent deprivation of an inmate's property does not violate due process if the state provides an adequate remedy to redress the wrong. *See id.* at 537. The Court later extended the *Parratt* rule to claims of intentional deprivations, holding that "an unauthorized intentional deprivation of property by a state employee does not constitute a violation of the procedural requirements of the Due Process Clause of the Fourteenth Amendment if a meaningful postdeprivation remedy for the loss is available." *Hudson v. Palmer*, 468 U.S. 517, 533 (1984).    In asserting a violation of procedural due process, a plaintiff must plead and prove that available state procedures for redressing the wrong are not adequate. *See Vicory v. Walton*, 721 F.2d 1062, 1065-66 (6th Cir. 1983); *see also, Wilson v. Beebe*, 770 F.2d 578, 584 (6th Cir. 1985) (en banc).

Plaintiff has not shown that Michigan fails to provide an adequate postdeprivation remedy to address his destruction of property claims. On the contrary, plaintiff has several state court avenues he can pursue. For example, he can file a suit for damages to goods unlawfully detained, *see* MICH. COMP. LAWS § 600.2920, and he can file a suit seeking recovery of damages for the tortious conduct of prison employees under the Michigan Court of Claims Act, *see* MICH. COMP. LAWS § 600.6401 *et seq*. The Sixth Circuit has explicitly held that these postdeprivation remedies are adequate under *Parratt. See Carlton v. Jondreau*, 76 Fed. Appx. 642, 643 (6th Cir. 2003); *Copeland v. Machulis*, 57 F.3d 476, 480 (6th Cir. 1998); *Etheridge v. Evers*, 326 F. Supp. 2d 818,

14

824 (E.D. Mich. 2004) (O'Meara, J., adopting Report & Recommendation of Majzoub, M.J.). Because the state provides plaintiff adequate postdeprivation remedies for the loss and destruction of his property, his due process claim fails as a matter of law. Accordingly, the Court should grant defendants' motion for summary judgment with respect to this claim.

3.    *Access to Courts*

Plaintiff next claims that defendants' destruction and loss of his legal materials, including research and state court transcripts, violates his right of access to the courts. The Court should conclude that defendants are entitled to summary judgment on this claim.

### a. Access to Courts Generally

Prisoners have a fundamental right of access to the courts. *See Bounds v. Smith*, 430 U.S. 817, 821 (1977). "The right springs from the Due Process Clauses of the Fifth and Fourteenth Amendments and the right of petition found in the First Amendment," *Hodge v. Prince*, 730 F. Supp. 747, 751 (N.D. Tex. 1990), as well as from the Privileges and Immunities Clause of Article IV. *See Chambers v. Baltimore and Ohio R.R.*, 207 U.S. 142, 148 (1907). A prisoner's access to the courts must be adequate, effective and meaningful. *See Bell v. City of Milwaukee*, 746 F.2d 1205, 1261 (7th Cir. 1984); *Ryland v. Shapiro*, 708 F.2d 967, 972 (5th Cir. 1983). A prisoner asserting a denial of access to courts claim must satisfy the constitutional standing requirement by alleging an actual injury. *See Lewis v. Casey*, 518 U.S. 343, 349, 351-53 (1996). To meet this requirement, a plaintiff must show that the actions of the prison officials "hindered the prisoner's efforts to pursue a nonfrivolous claim." *Penrod v. Zavaras*, 94 F.3d 1399, 1403 (10th Cir. 1996); *accord Lewis*, 518 U.S. at 353; *Myers v. Hundley*, 101 F.3d 542, 544 (8th Cir. 1996); *Stewart v. Block*, 938 F.Supp. 582, 586 (C.D. Cal. 1996) (plaintiff must show "a specific instance in which he was actually denied

15

access to the courts.") (internal quotation omitted). Further, "the injury requirement is not satisfied by just any type of frustrated legal claim." *Lewis*, 518 U.S. at 354. The right of access to the courts "does not guarantee inmates the wherewithal to transform themselves into litigating engines," and thus the right is limited to safeguarding prisoners' ability "to attack their sentences, either directly or collaterally, and in order to challenge the conditions of their confinement." *Id.* at 355. Under *Lewis*, dismissal is appropriate where a prisoner fails to allege a specific, litigation-related detriment resulting from the prison official's conduct. *See Pilgrim v. Littlefield*, 92 F.3d 413, 416 (6th Cir. 1996).

### b. Analysis

Plaintiff contends that defendants' actions impeded his access to the state courts in two ways. First, he contends that he was prevented from filing a *pro se* supplemental brief in his direct criminal appeal, as he is permitted to do under Michigan law. Second, he contends that defendants' actions prevented him from filing a motion for relief from judgment with respect to his criminal conviction in state court under MICH. CT. R. 6.500-.509. After applying the above framework to plaintiff's claim, the Court should conclude that defendants are entitled to summary judgment because plaintiff's allegations, even if true, do not establish a denial of access to courts claim.

Plaintiff's claim that he was denied the ability to file a *pro se* supplemental brief on direct appeal does not state a claim for relief under *Lewis*. As the Court noted in *Lewis*, a state need not afford a prisoner every avenue for accessing the courts that he may desire. Rather, a state need only permit a prisoner to access the courts in some manner. Because of this, a state may satisfy its obligations to provide meaningful access by providing counsel to a prisoner, without also providing him the tools necessary to file *pro se* motions and pleadings. *See Bourdon v. Loughman*, 386 F.3d

16

88, 93-94 (2d Cir. 2004) (citing cases); *Howland v. Kilquist*, 833 F.2d 639, 643 (7th Cir. 1987).
Thus, plaintiff was not denied access to courts by the destruction of his legal materials, because he
was represented by appointed counsel on his direct appeal. *See Partee v. Cook County Sheriff's
Office*, 863 F. Supp. 775, 781 (N.D. Ill. 1994).

With respect to his motion for relief from judgment, plaintiff does not detail what claims he
allegedly lost by the destruction of his legal materials. *See Konigsburg v. LeFevre*, 267 F. Supp. 2d
255, 261-62 (N.D.N.Y. 2003). Rather, plaintiff contains that defendants have impeded his right to
file such a motion. However, in his habeas action in this Court, Judge Borman recently granted a
stay of the case so that petitioner can present his claims to the Michigan courts via a motion for relief
from judgment. *See Dittmer v. Renico*, No. 04-CV-73581 (E.D. Mich. Sept. 23, 2004).[3] The Court's
action prevents the claims from being time-barred, and thus plaintiff will not lose any of his federal
habeas claims. *See id.* at 7-8. Nor has petitioner shown that any of his claims will be lost in the state
courts. There is no statute of limitations on a motion for relief from judgment in Michigan. Further,
plaintiff's habeas filing runs, with attached exhibits, to nearly 600 pages, and includes his state court
pleadings, motions and orders, as well as relevant portions of the trial transcript. *See Pet. for Writ
of Habeas Corpus, in Dittmer v. Renico*, No. 04-CV-73581 (E.D. Mich. Sept. 16, 2004). It now
appears that plaintiff is able to fully litigate his state court claims, and plaintiff has failed to allege,

---

[3]Pursuant to FED. R. EVID. 201 (court may take judicial notice of any fact "capable of
accurate and ready determination by resort to sources whose accuracy cannot reasonably be
questioned."), the Court may take judicial notice of its own records. *See United States v. Jones*,
29 F.3d 1549, 1553 (11th Cir. 1994) (court may take judicial notice of court order for purpose of
recognizing "judicial act" which the order represents); *St. Louis Baptist Temple, Inc. v. Federal
Deposit Ins. Corp.*, 605 F.2d 1169, 1172 (10th Cir. 1979) ("Judicial notice is particularly
applicable to the court's own records of prior litigation closely related to the case before it."); *Isaac
v. Jones*, 529 F. Supp. 175, 179 n.2 (N.D. Ill. 1981).

17

much less establish, that this is not the case with respect to any specific claim for relief. As the

Supreme Court has explained, to establish an access to courts claim

> the named plaintiff must identify a nonfrivolous, arguable, underlying claim . . . . It
> follows that the underlying cause of action, whether anticipated or lost, is an element
> that must be described in the complaint, just as much as allegations much describe
> the official acts frustrating the litigation. It follows, too, that when the access claim
> (like this one) looks backward, the complaint must identify a remedy that may be
> awarded as recompense but not otherwise available in some suit that may yet be
> brought. There is, after all, no point in spending time and money to establish the
> facts constituting denial of access when a plaintiff would end up just as well off after
> litigating a simpler case without the denial-of-access element.

*Christopher v. Harbury*, 536 U.S. 403, 415 (2002). Plaintiff has failed to allege with particularity

any claims he has lost as a result of defendants' conduct, nor has he offered anything to show that

he is now being thwarted in his effort to obtain the underlying relief he seeks in a state court motion

for relief from judgment or his federal habeas petition. At most, plaintiff's generalized allegations

establish only that the filing of a motion for relief from judgment was delayed or made more difficult

by defendants' actions. Such allegations fail to state a viable access to courts claim, as "[s]tanding

alone, delay and inconvenience do not rise to the level of a constitutional deficiency." *Griffin v.*

*DeTella*, 21 F. Supp. 2d 843, 847 (N.D. Ill. 1998); *see also, Winburn v. Howe*, 43 Fed. Appx. 731,

733 (6th Cir. 2002); *Purkey v. Green*, 28 Fed. Appx. 736, 742 (10th Cir. 2001). Accordingly, the

Court should grant defendants' motion for summary judgment with respect to his access to courts

claim.

### 4.      *Other Constitutional Claims*

Plaintiff also raises several other constitutional claims relating to defendants' actions. The

Court should conclude that defendants are entitled to summary judgment with respect to each of

these claims.

18

### *a. Cruel and Unusual Punishment*

First, plaintiff contends that defendants' destruction of his property constitutes an wanton infliction of pain, and therefore amounts to cruel and unusual punishment prohibited by the Eighth Amendment. The Eighth Amendment prohibits punishments which "involve the unnecessary and wanton infliction of pain." *Rhodes v. Chapman*, 452 U.S. 337, \*\*\* (1981) (internal quotation omitted). The Amendment "places restraints on prison officials, who may not, for example, use excessive physical force against prisoners. The Amendment also imposes duties on these officials, who must provide humane conditions of confinement; prison officials must ensure that inmates receive adequate food, clothing, shelter, and medical care, and must take reasonable measures to guarantee the safety of the inmates." *Farmer v. Brennan*, 511 U.S. 825, 832 (1994).

However, to establish an Eighth Amendment violation, a prisoner must show, *inter alia*, that "a prison official's act or omission . . . result[ed] in the denial of 'the minimal civilized measure of life's necessities.'" *Farmer*, 511 U.S. at 834 (quoting *Rhodes*, 452 U.S. at 347). Plaintiff has made no such allegation here. He does not allege that the destruction of his personal and legal property deprived him of any of life's necessities, nor that he sustained any physical injury as a result of destruction of his property. As a result, his Eighth Amendment claim fails as a matter of law. *See Carlton v. Jondreau*, 76 Fed. Appx. 642, 643 (6th Cir. 2003); *see also, Talley-Bey v. Knebl*, 168 F.3d 884, 886 (6th Cir. 1999); *Pryor-El v. Kelly*, 892 F. Supp. 261, 272 (D.D.C. 1995). Accordingly, the Court should grant defendants' motion for summary judgment with respect to plaintiff's Eighth Amendment claim.

### *b. Equal Protection*

Plaintiff also alleges that defendants denied him equal protection of the laws under the Equal

19

Protection Clause of the Fourteenth Amendment. However, plaintiff "has failed to allege that he is a member of a suspect class, or state how he was treated differently from others similarly situated." *Porter v. Soice*, 24 Fed. Appx. 384, 387 (6th Cir. 2001). Plaintiff's "conclusory allegations without any factual support fail[] to state an equal protection claim." *Turnboe v. Gundy*, 25 Fed. Appx. 292, 293 (6th Cir. 2001). Accordingly, the Court should grant defendants' motion for summary judgment with respect to plaintiff's equal protection claim.

### c. Privileges and Immunities

Finally, plaintiff contends that defendants' actions denied him the privileges and immunities of citizenship in violation of the Privileges and Immunities Clause of the Fourteenth Amendment. As with his equal protection claim, plaintiff has failed to specify in what respect defendants' alleged conduct violates the Privileges and Immunities Clause. To the extent that plaintiff relies on the Clause in support of his access to courts claim, *see Christopher*, 536 U.S. at 415 n.12 (recognizing that the right of access to courts springs, in part, from the Privileges and Immunities Clause), the claim fails for the reasons explained above.

To the extent that he is attempting to raise some other type of privileges and immunities claim, plaintiff's conclusory allegations of a privileges and immunities violation fail to state a claim. The Privileges and Immunities Clause provides that "[n]o State shall make or enforce any law which shall abridge the privileges or immunities of *citizens of the United States*." U.S. CONST. amend. XIV, § 1 (emphasis added). As its terms suggest, it is essentially an antidiscrimination provision which prevents a state from denying anyone within its borders the rights of *national* citizenship. As such, the Clause protects only those few rights which inhere in the character of the national government, such as the right to travel, to vote for or seek election to national offices, and to petition

20

Congress. *See Saenz v. Roe*, 526 U.S. 489, 502 n.15 (1999); *Twining v. New Jersey*, 211 U.S. 78,

97 (1908); *The Slaughter House Cases*, 83 U.S. (16 Wall.) 36, 74-79 (1872).[4]  Plaintiff does not

allege that he was denied any of these rights of national citizenship, nor that he was discriminated

against on the basis of his citizenship.  Accordingly, his privileges and immunity claim fails as a

matter of law.  *See Russell v. Hug*, 275 F.3d 812, 821-22 (9th Cir. 2002).

    4.    *Malicious Destruction of Property*

Petitioner also raises a claim for malicious destruction of property under Michigan law.  In

support of this claim, petitioner cites to a Michigan criminal statute which prohibits the malicious

destruction of property.  Because the Court should dismiss all of plaintiff's federal constitutional

claims, the Court should decline to exercise supplemental jurisdiction over his state law claim.

Congress has provided for limited, supplemental jurisdiction over state law claims that are

related to federal claims over which a court has original jurisdiction:

> Except as provided in subsections (b) and (c) or as expressly provided
> otherwise by Federal statute, in any civil action of which the district courts have
> original jurisdiction, the district courts shall have supplemental jurisdiction over all
> other claims that are so related to claims in the action within such original
> jurisdiction that they form part of the same case or controversy under Article III of
> the United States Constitution. . . .

28 U.S.C. § 1367(a).

However, Congress has also provided that "[t]he district courts may decline to exercise

supplemental jurisdiction over a claim under subsection (a) if . . . the district court has dismissed all

---

[4]Indeed, "the courts and legal commentators have interpreted the [*Slaughter House*]
decision as rendering the Clause essentially nugatory." *Paciulan v. George*, 229 F.3d 1226, 1229
(9th Cir. 2000) (citing ROBERT H. BORK, THE TEMPTING OF AMERICA 180 (1990); LAURENCE H.
TRIBE, AMERICAN CONSTITUTIONAL LAW 556 (2d ed. 1988); Kevin C. Newsom, *Setting
Incorporationism Straight: A Reinterpretation of the Slughter-House Cases*, 109 YALE L.J. 643, 646
(2000)).

claims over which it has original jurisdiction." 28 U.S.C. § 1367(c)(3). In determining whether to

exercise supplemental jurisdiction, courts should consider the following factors: judicial economy,

convenience, fairness to litigants, and comity. *See United Mine Workers of Am. v. Gibbs*, 383 U.S.

715, 726 (1966); *see also, Carnegie-Mellon Univ. v. Cohill*, 484 U.S. 343, 350 (1988). But, when

"federal law claims are eliminated before trial, the balance of these factors will point toward

declining to exercise jurisdiction over the remaining state-law claims." *Wright v. Associated Ins.*

*Cos., Inc.*, 29 F.3d 1244, 1251 (7th Cir. 1994); *see also, Gibbs*, 383 U.S. at 726 ("if the federal

claims are dismissed before trial, . . . the state claims should be dismissed as well"); *Imagineering,*

*Inc. v. Kiewit Pac. Co.*, 976 F.2d 1303, 1307 (9th Cir. 1992); *Morse v. University of Vermont*, 973

F.2d 122, 127-28 (2d Cir. 1992); *Reynolds v. Mercy Hosp.*, 861 F. Supp. 214 (W.D.N.Y. 1994);

*Heller v. CACL Federal Credit Union*, 775 F. Supp. 839, 843 (E.D. Pa. 1991).

Thus, "federal courts, absent exceptional circumstances, should abstain from exercising

[supplemental] jurisdiction when federal claims in a case can be disposed of by summary judgment."

*Walker v. Time Life Films, Inc.*, 784 F.2d 44, 53 (2d Cir. 1986). Accordingly, federal courts

routinely decline to exercise supplemental jurisdiction over state law claims where the plaintiffs'

federal civil rights claims are dismissed. *E.g., Martinez v. Colon*, 54 F.3d 980, 990-91 (1st Cir.

1995); *Rhyne v. Henderson County*, 973 F.2d 386, 395 (5th Cir. 1992); *Wynn v. Morgan*, 861 F.

Supp. 622, 637 (E.D. Tenn. 1994); *Stera v. Hunt Real Estate Corp.*, 859 F. Supp. 661, 668

(W.D.N.Y 1994); *Mark v. Borough of Hatboro*, 856 F. Supp. 966, 976-77 (E.D. Pa. 1994), *aff'd*, 51

F.3d 1137 (3d Cir. 1995); *Wexley v. Michigan State Univ.*, 821 F. Supp. 479, 487 (W.D. Mich.

1993), *aff'd*, 25 F.3d 1052 (6th Cir. 1994); *Cruz v. City of Wilmington*, 814 F. Supp. 405, 413-14 (D.

Del. 1993); *Lahaza v. Azeff*, 790 F. Supp. 88, 93-94 (E.D. Pa. 1992); *Procopio v. Johnson*, 785 F.

Supp. 1317, 1320 (N.D. Ill. 1992), *aff'd*, 994 F.2d 325 (7th Cir. 1993).

Here, all of plaintiff's federal claims should be dismissed against these defendants. A trial date is not imminent, and there have not been substantial expenditures of time and money on discovery. Further, there are no "exceptional circumstances" compelling the Court to exercise supplemental jurisdiction over plaintiff's state law claims. Thus, the Court should decline to exercise such supplemental jurisdiction and should dismiss plaintiff's state law claims. *Accord Williams v. DiVittoria*, 777 F. Supp. 1332, 1341 (E.D. La. 1991) (because judicial economy is the principal concern in deciding whether to exercise supplemental jurisdiction, a court should not exercise such jurisdiction when trial has not begun and there has been little or no expenditure of resources on discovery); *Martinez*, 54 F.3d at 990 (jurisdictional basis for deciding state law claims evaporated when federal questions were dismissed far in advance of trial).

D.    *Plaintiff's Motion to Amend*

Plaintiff has also filed a motion for leave to amend his complaint. His proposed amended complaint reinstitutes his claims against the previously dismissed defendants, and is substantively the same as his initial complaint. In addition to these claims, plaintiff asserts new claims against three previously unnamed defendants: William Overton, Stephen Marschke, and Jim Armstrong. The Court should conclude that plaintiff's proposed amendment would be futile, and accordingly should deny plaintiff's motion for leave to amend.[5]

1.    *Legal Standard*

---

[5]Under 28 U.S.C. § 636, I have the power to determine plaintiff's motion for leave to amend. However, because a resolution of that motion is intertwined with defendants' motion for summary judgment, it is appropriately included in this Report and Recommendation for final determination by the District Judge.

23

Ordinarily, leave to amend a complaint or other pleading "shall be freely granted when justice

so requires." FED. R. CIV. P. 15(a).  As with all of the Federal Rules of Civil Procedure, this rule

"shall be construed and administered to secure the just, speedy, and inexpensive determination of

every action." FED. R. CIV. P. 1.  Generally, courts have shown "a strong liberality . . . in allowing

amendments under Rule 15(a)." *Tahir Erk v. Glenn L. Martin Co.*, 116 F.2d 865 (4th Cir. 1941).

As the Supreme Court has stated:

> In the absence of any apparent or declared reason–such as undue delay, bad faith or
> dilatory motive on the part of the movant, repeated failure to cure deficiencies by
> amendments previously allowed, undue prejudice to the opposing party by virtue of
> allowance of the amendment, futility of amendment, etc.–the leave sought should, as
> the rules require, be "freely given."  Of course, the grant or denial of an opportunity
> to amend is within the discretion of the District Court, but outright refusal to grant
> the leave without any justifying reason appearing for the denial is not an exercise of
> discretion; it is merely abuse of that discretion and inconsistent with the spirit of the
> Federal Rules.

*Foman v. Davis*, 371 U.S. 178, 182 (1962).  Thus, "[w]hen there is a lack of prejudice to the

opposing party and the amended complaint is obviously not frivolous, or made as a dilatory

maneuver in bad faith, it is abuse of discretion to deny [the] motion." *Hurn v. Retirement Fund Trust

of Plumbing, Heating & Piping Indus. of S. Cal.*, 648 F.2d 1252, 1254 (9th Cir. 1981).  In short,

courts should construe liberally Rule 15(a) in favor of permitting amendment. *See Greenberg v. Life

Ins. Co. of Va.*, 177 F.3d 507, 522 (6th Cir. 1999); *Marks v. Shell Oil Co.*, 830 F.2d 68, 69 (6th Cir.

1987).

Nevertheless, as *Foman* makes clear there are certain situations in which it is appropriate to

deny leave to amend.  One such circumstance is when amendment would be "futil[e]." *Foman*, 371

U.S. at 182; *see also, Moss v. United States*, 323 F.3d 445, 476 (6th Cir. 2003).  Amendment is futile

when the proposed amendment is subject to dismissal under Rule 12(b)(6), that is, when the

24

proposed amendment fails to state a claim upon which relief may be granted. *See In re NAHC, Inc. Sec. Litig.*, 306 F.3d 1314, 1332 (3d Cir. 2002); *Parry v. Mohawk Motors of Mich., Inc.*, 236 F.3d 299, 307 (6th Cir. 2000); *Rose v. Hartford Underwriters Ins. Co.*, 203 F.3d 417, 420-21 (6th Cir. 2000).[6] This rule coincides with the rule established by the Prison Litigation Reform Act requiring screening and dismissal of prisoner and *in forma pauperis* complaints which fail to state a claim. *See* 28 U.S.C. § 1915A; 42 U.S.C. § 1997e(c)(1); *see also, Moore v. Avery*, ___ Fed. Appx. ___, ___ , 2005 WL 19533, at *2 (9th Cir. Dec. 7, 2004) (amended complaint is subject to PLRA screening); *Aiello v. Frank*, No. 03-C-0127-C, 2003 WL 23277415, at *1 (W.D. Wis. June 3, 2003) (same).

   2.   *Analysis*

   Plaintiff's claims in the amended complaint (except those against defendants Gonzales, Wazny, and Kellogg), fall into two general categories, which will be discussed separately.

   a. *Defendants Scott, Carl, Abrams, Sigafoose, Renico, Powell,*
   *Overton, Marschke, and Armstrong*

   Plaintiff's first set of claims relate to defendants Scott, Carl, Abrams, Sigafoose, Renico, Powell, Overton, Marschke, and Armstrong. Plaintiff's claims allege that these defendants are liable for the constitutional violations described in his complaint because they either failed to adequately

---

[6]When, as is the case here, the motion to amend is made in response to a motion for summary judgment, the Court may properly look to the affidavits and other evidence in the record. In such a case, "[f]aced with the affidavits and documentary evidence filed by the defendants in support of summary judgment, the Court cannot assess the proposed amended complaint as if that evidence does not exist." *Smith v. Chrysler Corp.*, 938 F. Supp. 1406, 1414 (S.D. Ind. 1996). In such a case, the proposed amended complaint is futile under Rule 15(a) not only if it would fail to survive a motion to dismiss for failure to state a claim, but also if the amended pleading could not survive a previously filed motion for summary judgment. *See Bauchman v. West High Sch.*, 132 F.3d 542, 561-62 (10th Cir. 1997); *Wilson v. American Trans Air, Inc.*, 874 F.2d 386, 392 (7th Cir. 1989); *Smith*, 938 F. Supp. at 1414.

investigate his grievances and resolve the matter, or because they failed to adequately train and supervise their subordinates. *See* Amended Compl., ¶¶ 9, 67-70 (Scott, Step 1 respondent and supervisor); ¶¶ 10, 71 (Carl, Step I respondent and supervisor); ¶¶ 11, 61-62, 67, 72 (Abrams, Step I coordinator and supervisor); ¶¶ 12, 84-86, 89-91 (Sigafoose, Step II respondent); ¶¶ 13, 74, 87, 89-91 (Renico, Warden and Step II respondent); ¶¶ 14, 98 (Powell, Step III respondent); ¶¶ 15, 98 (Martin, Director of MDOC and Step III respondent); ¶¶ 16, 98 (Overton, Deputy Director and Acting Director of MDOC, and Step III respondent); ¶¶ 17, 111-13 (Marschke, internal affairs employee and respondent in Michigan State Police investigation); ¶¶ 18, 114-16 (Armstrong, prisoner affairs officer and Step III investigator). Plaintiff alleges that the improper response to his grievances, failure to investigate, and failure to supervise by these defendants violated his right of access to the courts. *See id.,* ¶¶ 122, 126-30, 145. The Court should conclude that these claims fail as a matter of law, and thus that permitting leave to amend would be futile.

Liability in a § 1983 action cannot be based on a theory of *respondeat superior. See Monell v. New York City Dep't of Social Servs.,* 436 U.S. 658, 691 (1978). Thus, "[t]o recover damages under 42 U.S.C. § 1983, a plaintiff must establish a defendant's personal responsibility for the claimed deprivation of a constitutional right." *Diebitz v. Arreola,* 834 F. Supp. 298, 304 (E.D. Wis. 1993). As the Sixth Circuit has stated:

> "Section 1983 liability will not be imposed solely upon the basis of respondeat superior. There must be a showing that the supervisor encouraged the specific incident of misconduct or in some other way directly participated in it. *At a minimum, a § 1983 plaintiff must show that a supervisory official at least implicitly authorized, approved or knowingly acquiesced in the unconstitutional conduct of the offending subordinate.*"

*Taylor v. Michigan Dep't of Corrections,* 69 F.3d 73, 81 (6th Cir. 1995) (quoting *Bellamy v. Bradley,* 729 F.2d 416, 421 (6th Cir. 1984) (emphasis added)) (emphasis by *Taylor* court); *see*

*also, Monell*, 436 U.S. at 693-95; *Birell v. Brown*, 867 F.2d 956, 959 (6th Cir. 1989); *Williams v. Smith*, 781 F.2d 319, 323 (2d Cir. 1986); *Dunn v. Tennessee*, 697 F.2d 121, 128 (6th Cir. 1982); *Sims v. Adams*, 537 F.2d 829, 831 (5th Cir. 1976). Furthermore, an allegation that a supervisor was aware of an actionable wrong committed by a subordinate and failed to take corrective action "is insufficient to impose liability on supervisory personnel under § 1983." *Poe v. Haydon*, 853 F.2d 418, 429 (6th Cir. 1988). As the *Haydon* court stated: "A supervisory official's failure to control, or train the offending individual is not actionable, unless the supervisor 'either encouraged the specific incident or in some other way directly participated in it.'" *Haydon*, 853 F.2d at 429 (quoting *Hays v. Jefferson County*, 668 F.2d 869, 874 (6th Cir. 1982)); *see also, Mills v. City of Barbourville*, 389 F.3d 568, 580 (6th Cir. 2004) ("At a minimum, the plaintiff must demonstrate that a supervisory official condoned, encouraged, or knowingly acquiesced in the alleged unconstitutional misconduct.").

With respect to plaintiff's failure to supervise and train claims, plaintiff's amended complaint contains no allegations that these defendants "either encourages the specific incident or in some other way directly participated in it." *Haydon*, 853 F.2d at 429 (internal quotation omitted). At most, he alleges that these defendants failed to take appropriate corrective action after the alleged constitutional violations had occurred. This is insufficient to state a supervisory liability claim under § 1983. *See Mills*, 389 F.3d at 581; *Clarke v. Sweeney*, 312 F. Supp. 2d 277, 297-98 (D. Conn. 2004). Further, plaintiff's supervisory liability claims fail because the underlying constitutional claims are without merit, as discussed above. *See Collins v. City of Harker Heights*, 503 U.S. 115, 122 (1992) (emphasizing "the separate character of the inquiry into the question of municipal [or supervisory] responsibility and the question whether a constitutional violation occurred."); *City*

27

*of Canton v. Harris*, 489 U.S. 378, 385 (1989) (emphasis added) (the "first inquiry in any case alleging municipal [or supervisory] liability under § 1983 is the question whether there is a direct causal link between a municipal policy or custom and the alleged *constitutional deprivation*.").[7]

Further, with respect to plaintiff's grievance and investigation claims, it is clear that plaintiff has alleged no violation of his constitutional rights by these defendants. Nothing in the Constitution requires a state to establish a prison grievance system, nor to investigate or respond to grievances submitted pursuant to prison policy. *See Carlton v. Jondreau*, 76 Fed. Appx. 642, 644 (6th Cir. 2003); *Miller v. Bock*, 55 Fed. Appx. 310, 311-12 (6th Cir. 2003); *Spencer v. Moore*, 638 F. Supp. 315, 316 (E.D. Mo. 1986). Likewise, plaintiff had no constitutional right to have prison officials conduct an investigation of his allegations at his request. *See Carrasquillo v. City of New York*, 324 F. Supp. 2d 428, 438 (S.D.N.Y. 2004). Accordingly, these claims are without merit, and the Court should therefore conclude that amendment of plaintiff's complaint to add these claims would be futile.

### b. *Defendants Cornejo and Doe*

Plaintiff's claims against defendants Cornejo and Doe relate to the original search of his cell, the issuance of the misconduct ticket against him, and his placement in administrative segregation. *See* Amended Compl., ¶¶ 4-5, 27-28, 33, 66. Plaintiff alleges that the conduct of Cornejo and Doe was the ultimate cause of the loss of his personal and legal property, and thus contributed to the denial of his right to access the courts. *See id.*, ¶ 122. Plaintiff also alleges that the actions of

---

[7]Although *Collins* and *Harris* both involved municipal liability, the standards for municipal and supervisory liability under § 1983 are substantially the same. *See Southard v. Texas Bd. of Criminal Justice*, 114 F.3d 539, 551 (5th Cir. 1997); *Carter v. City of Philadelphia*, 4 F. Supp. 2d 386, 394 (E.D. Pa. 1998).

28

defendants Cornejo and Doe denied him due process of law.

To the extent that plaintiff claims these defendants violated his right of access to the courts, the claim fails for the same reason that it fails against defendants Gonzales, Wazny, and Kellogg. Likewise, to the extent that plaintiff's due process claim mirrors the claim the he raised against those defendants—relating to the destruction of his property—the claim fails for the reasons discussed above. In addition, plaintiff's claims against these defendants fail because he does not allege that they were personally involved in the loss or destruction of his property. He alleges, at most, that by placing him in administrative segregation, they were a "but-for" cause of the destruction; that is, but for his placement in segregation, his property would not have been lost or destroyed. "This 'but for' causation' argument, however, is not the standard for Section 1983 liability." *Jackson v. Johnson*, 30 F. Supp. 2d 613, 618 (S.D.N.Y. 1998). It is true that a state actor may be liable for causing a deprivation of rights where he sets in motion a series of events leading to the deprivation, but only if the actor knows or should know that the constitutional deprivation will occur. *See Williams v. Pennsylvania State Police*, 144 F. Supp. 2d 382, 384 (E.D. Pa. 2001). Plaintiff has not alleged that defendants Cornejo and Doe knew, or should have known, that placing him in administrative segregation would result in Kellogg destroying his property.

To the extent that plaintiff raises a separate due process claim against defendants Cornejo and Doe based on the misconduct ticket and his placement in administrative segregation, these claims also fail. "A prisoner has no constitutionally protected immunity from being falsely accused of misconduct. The prisoner only has a right to due process of law during the disciplinary proceedings against him concerning the allegedly false misconduct charges." *Riley v. Church*, 874 F. Supp. 765, 768 (E.D. Mich. 1994) (Gadola, J.) (citations omitted), *aff'd*, 81 F.3d 161 (6th Cir. 1996); *accord*

29

*Cromer v. Dominguez*, 103 Fed. Appx. 570, 573 (6th Cir. 2004); *Jackson v. Hamlin*, 61 Fed. Appx. 131, 132 (6th Cir. 2003). Plaintiff does not alleged that he was denied a fair hearing on the misconduct ticket, and indeed the misconduct hearing resulted in the dismissal of the ticket.

Nor has petitioner stated a due process claim based on his placement in administrative segregation. To show that his due process rights were violated plaintiff must show that his placement in segregation "imposes atypical and significant hardship on the inmate in relation to the ordinary incidents of prison life." *Sandin v. Conner*, 515 U.S. 472, 484 (1995). Plaintiff has made no allegations that his confinement in administrative segregation imposed any hardship on him significantly more restrictive than the normal incidents of prison confinement. *See Rimmer-Bey v. Brown*, 62 F.3d 789, 790-91 (6th Cir. 1995) (placement in administrative segregation is generally not an atypical and significant hardship, even when such segregation has a substantial adverse impact on the prisoner); *see also, Neal v. District of Columbia*, 131 F.3d 172, 175 (D.C. Cir. 1998); *Holliman v. McAdorn*, No. 96 C 3701, 1997 WL 13704, at *2 (N.D. Ill. Jan. 8, 1997). Accordingly, the Court should conclude that amendment of the complaint to add these claims would be futile.

E.     *Conclusion*

In view of the foregoing, the Court should conclude that there is no genuine issue of material fact and that plaintiff's claims fail as a matter of law. Accordingly, the Court should grant defendants' motion for summary judgment with respect to plaintiff's claims under § 1983, and should decline to exercise supplemental jurisdiction over plaintiff's state law claims. The Court should also conclude that amendment of the complaint would be futile, and should therefore deny plaintiff's motion for leave to amend.

III.     NOTICE TO PARTIES REGARDING OBJECTIONS:

30

The parties to this action may object to and seek review of this Report and Recommendation, but are required to act within ten (10) days of service of a copy hereof as provided for in 28 U.S.C. § 636(b)(1) and E.D. Mich. LR 72.1(d)(2). Failure to file specific objections constitutes a waiver of any further right of appeal. *Thomas v. Arn*, 474 U.S. 140 (1985); *Howard v. Secretary of Health & Human Servs.*, 932 F.2d 505 (6th Cir. 1991); *United States v. Walters*, 638 F.2d 947 (6th Cir. 1981). Filing of objections which raise some issues but fail to raise others with specificity, will not preserve all the objections a party might have to this Report and Recommendation. *Willis v. Secretary of Health & Human Servs.*, 931 F.2d 390, 401 (6th Cir. 1991); *Smith v. Detroit Federation of Teachers Local 231*, 829 F.2d 1370, 1373 (6th Cir. 1987). Pursuant to E.D. Mich. LR 72.1(d)(2), a copy of any objections is to be served upon this Magistrate Judge.

Within ten (10) days of service of any objecting party's timely filed objections, the opposing party may file a response. The response shall be not more than five (5) pages in length unless by motion and order such page limit is extended by the Court. The response shall address specifically, and in the same order raised, each issue contained within the objections.

Paul J. Komives

PAUL J. KOMIVES
UNITED STATES MAGISTRATE JUDGE

Dated: March 2, 2005

31